In the Matter of ABRAHAM H. WEINSTEIN, an Attorney, Respondent.

First Department, February 14, 1930.

*Isidor J. Kresel* of counsel [*Edward S. Greenbaum* with him on the brief], for the petitioners.

*Herman Silverman,* for the respondent.

DOWLING, P. J. The respondent was admitted to practice as an attorney and counselor at law in the State of New York at a term of the Appellate Division of the Supreme Court of the State of New York, First Department, on January 15, 1923.

The petition charges that respondent has been guilty of misconduct as an attorney at law as follows:

On or about June 28, 1926, the respondent herein, as attorney for Leonard Schwalbe, instituted an action against Joseph Block in the Municipal Court of the City of New York, Borough of Manhattan, Fourth District, in which it was sought to recover $800 damages for plaintiff's personal injuries and $200 for injuries to plaintiff's property, alleged to have been sustained as a result of the defendant's negligence. Thereafter the respondent prepared and served, or caused to be prepared and served, a bill of particulars in said action in which it is among other things alleged that as a result of the negligence of the defendant therein the plaintiff sustained the following injuries: " contusions to the anterior wall of chest, contusion and abrasions to the left wrist; " that by reason of such injuries the plaintiff " was incapacitated and prevented from following his usual occupation for a period of one week at a loss of $50 per week " and " expended the sum of $8 for medicines and medical attendance." It is further alleged in said bill of particulars that as a result of the defendant's negligence the plaintiff's automobile was damaged as follows:

| | |
|---|---:|
| Replace gas tank | $15 00 |
| Replace tire carrier | 8 00 |
| Replace rear bumper | 18 00 |
| Straighten rear fender | 3 50 |
| Straighten tail lamp | 3 00 |
| Straighten rear panel of board | 10 00 |
| | $57 50 |

The allegations made by the respondent in behalf of the plaintiff in the bill of particulars prepared and served as aforesaid and the claims made in said action were false and fraudulent. The plaintiff had not received any personal injuries and had not been incapacitated or put to any expense for medicines or medical attendance as a result of the accident referred to. The plaintiff's automobile had not been damaged as alleged in said bill of particulars and he had not incurred an expense of fifty-seven dollars and fifty cents as claimed therein. After the service of the said bill of particulars the respondent conducted negotiations with the Maryland Casualty Company, which company had insured the defendant in the action against damages of the character claimed therein, and arranged a settlement of the plaintiff's claims for the sum of twenty-five dollars which sum said company paid to the respondent on or about December 20, 1926. When the respondent received the said sum of twenty-five dollars he delivered to the company a paper or document purporting to be a general release signed by the plaintiff in the action and having attached thereto a certificate subscribed by the respondent herein as commissioner of deeds to the effect that on the 15th day of December, 1926, Leonard E. Schwalbe had appeared before him and acknowledged that he had executed the document. The certificate attached to the paper or document purporting to be a general release delivered as aforesaid was false and untrue. Leonard E. Schwalbe had not appeared before the respondent on the 15th day of December, 1926, or on any other day and acknowledged that he had executed the said document. The respondent instituted and prosecuted said action against Joseph Block, prepared and served or caused to be prepared and served the bill of particulars above referred to and delivered the paper or document purporting to be a general release to the Maryland Casualty Company upon the receipt of the sum of twenty-five dollars with the intent and purpose of inducing the defendant in the said action and the Maryland Casualty Company to give and pay him money by falsely and fraudulently representing to them that the plaintiff named therein had been injured and damaged as alleged in said bill of particulars, and the respondent obtained said sum of twenty-five dollars from said company by making said false and fraudulent representations, with knowledge that they were false and fraudulent.

There is a second charge involving an action instituted on the same day and in the same court on behalf of Florence Schwalbe, the wife of Leonard Schwalbe. In that action damages of $1,000 for personal injuries were claimed. A bill of particulars was served in which the injuries alleged to have been sustained by Mrs. Schwalbe

were set out, and in which it is stated that she was incapacitated for a period of ten days and expended ten dollars for medicine. The allegations are similar to those in the first charge.

Respondent answered the petition, and the matter was referred to a referee to take testimony in regard to said charges and to report the same with his opinion thereon to this court.

The referee reports that, in his opinion, " the evidence is not sufficient to sustain the charges against the respondent, except the charge that the releases were not acknowledged before him."

An examination of the record discloses that in April, 1926, Leonard E. Schwalbe was driving his automobile on Ocean parkway in Brooklyn when another car collided with his car. In the car with him were his wife and two children. No one was injured but the car was damaged — the rear left fender, the tail light and the hub cap. Schwalbe took the number of the other car and drove on. Some time after Schwalbe met one Sol Selzer and spoke to him about the accident, and told him just how it happened. Schwalbe imagines that Selzer referred him to respondent, but he did not see respondent, nor did he get in touch with the latter and had no conversation with him at any time. He received a letter from respondent requesting him to call for a physical examination, but he called up and said that no medical examination was necessary as neither he nor Mrs. Schwalbe was hurt. Later he received a general release from respondent, dated December 15, 1926, which he signed and returned to respondent. He also received a general release for Mrs. Schwalbe. Schwalbe testified he signed both releases. He testified he did not acknowledge these papers before respondent and the first time he saw respondent was at the hearing before Judge WASSERVOGEL in 1928. It was conceded that he received twenty-five dollars from respondent in settlement of these cases.

Respondent testified that Sol Selzer spoke to him about this (the Schwalbe) case, and he made notations as to the accident, how it occurred and what the claim was. On this information he started the actions as he did. The pleadings were oral and the bills of particulars were unverified. Part of respondent's testimony is as follows: " All I want to say is — I mean with reference to this particular case — is that this case came into the office through Mr. Selzer. I did as I usually do, write letters to the clients asking them to come in with certain information. I wrote a claim letter in this case. I never serve the summons immediately, I write a letter. When I got no response, I served the summons. My file recalls to me that I arranged a physical examination with the doctors of the Maryland, and on one occasion I wrote the people

but they never came in. I arranged another, and they never came in, in answer to the second letter. I went down to the company and explained to them. We were very friendly, because my file was always an open book for anybody, whether my clients or the companies, and for that reason I am able to get a representative of every company that I ever had a case with, who will testify and state that I never hid anything or tried to put anything over. Q. How did you arrive at the figure of $50? A. I went down to see Mr. Twelves, who was in charge of this case at the insurance company office, with several cases. We spoke about the other cases and, if I remember correctly, we arrived at a figure of settlement; that is I gave them my idea of what it was worth, and then he gave me the best he could pay on it, and I submitted it to my client, and if they said it was satisfactory, I got up a release and had them sign it and sent them a check. Q. Wasn't it because your clients disappointed you in not submitting to a physical examination, that you thought you had better settle? A. I went down there and told Mr. Twelves that my client had disappointed both his doctor and me twice, that I could not give him a physical examination, and asked him whether he did not want to dispose of it. He had a report of it. There was no question that the accident occurred. They discounted the injuries and said, in view of the property damage, they would pay approximately what that claim was and would pay no more, unless they came down for a physical. I went back to the office and wrote these people a letter — as I recall, I think I did — telling them that because of their failure to come down for a physical examination, the company would pay no more than $50. I sent them a letter. I don't know what happened after that, but I did send them a release. How it came to be sworn, I don't remember, but it was sworn, and I sent it to the company, and they sent me a check, and I sent Mr. and Mrs. Schwalbe a check — made it payable to both of them."

He testified that he had no recollection as to where, how or when he signed the acknowledgments on the general releases.

As to the bills of particulars, respondent's testimony is that he had no recollection of how he found the Schwalbes were injured, other than the fact that he had two doctors' certificates which he found in his file, and which he claimed came in answer to a letter asking therefor. He testified the letter was sent to Mr. and Mrs. Schwalbe, and produced a copy of the letter to the Schwalbes requesting them to call for the physical examination and bring with them their doctor's certificates of the injuries they had sustained. There were produced two undated certificates signed by Dr. Sidney M. Saphir. Dr. Saphir testified that he did not know respondent; that he had no record of any of his cases; that he had no recollection of

these cases; that he recognized and acknowledged the certificates as his. He testified that the certificate was given to the person mentioned therein after an examination of that person. Mr. Schwalbe testified he never saw Dr. Saphir before the doctor testified, and he had never gone, with his wife, to the doctor's office; that he had never gone to the address 118 First street, which was that of said office, and had never seen the doctor's certificates before they were shown to him on the witness stand.

In the Leonard Schwalbe case the bill of particulars states that by reason of his injuries the plaintiff "was incapacitated and prevented from following his usual occupation for a period of one week at a loss of $50 a week" and "expended the sum of $8 for medicines and medical attendance." In the Florence Schwalbe case it is alleged that the plaintiff "was incapacitated for a period of ten days and expended the sum of $10 for medicines and medical attendance." Questioned on these particulars, Mr. and Mrs. Schwalbe denied the same, and it appears that Mr. Schwalbe was at that time earning over one hundred dollars a week. No explanation is offered by respondent as to the source of the information on which these items of the bills of particulars are supposed to be based.

On the question of damage to the automobile, Schwalbe testified that the damage was to the rear left fender, tail light and hub cap. The other items of property damage set out in the bill of particulars Schwalbe denied. There was produced by respondent a receipted garage bill of Burnbaum Bros., formerly located at 142 East Forty-second street. Respondent testified that this was the basis for the bill of particulars. Harry Burnbaum, one of the firm of Burnbaum Bros., identified the bill as a firm bill, said the handwriting looked like the bookkeeper's handwriting, and testified that he knew nothing about the matter except what he saw on the bill; that he did not know respondent nor Mr. Schwalbe, and that the firm is now out of business. Mr. Schwalbe testified that he never had any work done to his automobile at Burnbaum Bros., and never paid any money to them, and never saw the bill before it was shown to him on the witness stand; that he never had any repairs made away from home, only in the neighborhood of his home, and in response to a question by the referee he said at that time he took his car to Eighteenth avenue and Seventy-second street, Brooklyn. How respondent obtained the Burnbaum bill is not explained. The amount thereof is fifty-seven dollars and fifty cents, and it is dated May 3, 1926. The insurance company had the damage estimated at fifty-one dollars and fifty cents; that estimate is dated October 22, 1926.

It was satisfactorily established that Mr. Schwalbe authorized Selzer to have an attorney press his claim for damages growing out of the collision described. The doctor's certificates and the garage bill, supported by the testimony of Dr. Saphir and the garage man, may be genuine. But how they came into respondent's possession is not satisfactorily explained. This lack of satisfactory explanation, coupled with the positive testimony of Schwalbe denying any connection therewith, causes us to regard them with mistrust. Were the bills of particulars limited to the items based on these documents less fault could be found with respondent. However, the statements as to incapacity, loss of earnings, and expenditure of moneys for medicines and medical attendance were fraudulent and never had any basis in fact. Respondent's only explanation is the general statement that there was never any bill of particulars drawn or dictated unless he had information from the client. In view of the testimony of the Schwalbes denying these particular items, in this instance it would seem the particulars are pure fiction.

The testimony of Mr. and Mrs. Schwalbe is that they never appeared before respondent to acknowledge the execution of the general releases. They testified they never saw respondent until nearly two years after the date thereof. As has been said, respondent was unable to recall how or when he signed the certificates, or whether either Mr. or Mrs. Schwalbe appeared before him. There is no doubt that the certificates of acknowledgment attached to these general releases were false and untrue.

Fraudulent intent is the basis of the charges herein. The referee has found that it has not been established. The petitioners, in their brief on this motion, state: " It may be that the petitioners have not fully sustained the burden of proof necessary to convict the respondent as framed." Had such intent been established, respondent should be disbarred. We cannot but condemn, however, the fraudulent features of the bills of particulars prepared by respondent, and we cannot approve of his conduct in subscribing a false certificate of acknowledgment, when the individual named therein had not appeared before him.

The respondent should be suspended from practice for the period of two years, with leave to apply for reinstatement at the expiration of that term upon proof of his compliance with the conditions incorporated in the order.

FINCH, McAVOY, MARTIN and O'MALLEY, JJ., concur.

Respondent suspended for two years.